May it please the court. I'm Dave Hardy. I represent the appellants Arizona Green Party and Arizona Libertarian Party. Arizona divides political organizations into two classes, those with and those without ballot access. It divides organizations with ballot access into two classes also. Those with continuing ballot access, such as Arizona Libertarian Party, who have continuing access and also fall subject to certain legal duties. For example, they must nominate their candidates at primaries rather than private conventions. The other class with ballot access is new parties, such as the Arizona Green Party. And in our briefing, we mentioned that the Arizona Green Party had lost ballot status. That was only temporary. Last December, that is to say last month, they achieved ballot status again by submitting sufficient number of petitions. Until 2011, all parties with ballot access registered in the same way, a standard registration form where you filled in the name of the party you wished. In 2011, the Arizona legislature made a rather interesting change to that law. From that point on, the two largest parties in the state, measured by their registrations, got check boxes next to their names, Democrat and Republican. Everyone else with ballot access got a check box labeled other. As evidence that the someone in the government has a rather puckish sense of humor, the instructions for voter registration say you must fill in the entire name of the party, Arizona Libertarian Party, Arizona Green Party, and the blank is somewhat under one inch long. I think there are two things that I'd like to stress at the outset. One is that this discrimination is created by statute. The state alleges as justification that some parties are more stable than another and we'd like not to have to reprint the ballot form when people drop on or drop off. Arizona Libertarian Party has been on the ballot for 20 plus years. Arizona Green Party is qualified by a petition, which under 16-801 means they will be on the ballot for the next four years, two ballot cycles. But the fact of the matter is under the statute, neither party could ever prove their stability. They could be on the ballot for 50 years. They could bring in social scientists to demonstrate that they will certainly be on the ballot for the next 50 years, and they still cannot get listed on the voter registration forms. The statute says simply... Isn't this a case where the burden is minimal and maybe the rationale is minimal? I mean, it's sort of... Well... I mean, the burden is... I mean, first of all, this is one of, what, three or four different forms that are used. I think three, Your Honor. Well, there's the DMV form and there's an online form. There's also the federal form and there's this form. So there are four forms. Okay. Right? Yes. And this is the only one that has this characteristic. Yes, Your Honor. Is there anything in the record to demonstrate what percentage of voters use this form? That is not in the record, Your Honor. Did you do any discovery? There was none in this case, Your Honor. I mean, that's troubling to me because, along the lines of what Judge Berzon is asking, let's imagine that now that they have online forms and you can do it as, like, motor voter registration, which you can with the Department of Transportation of Arizona and the other forms. What if only, imagine, only ten people registered every year with the paper form? Would you have the same argument that you think you're making now? I think it would be safe to say the argument would be weaker, Your Honor. Yeah. So wouldn't it be of interest? Because maybe the state will tell us, but it's not in the record. We have no idea, for example, how many paper forms are used at all. And on the other forms, there's just a line, correct? Or a blank. Yes, Your Honor. Okay. Which, in a way, asks the question itself, if the state is willing to accept it on the other forms, why not on this one? That's certainly a question, of course, we'll be asking the state. But it seems to me that there is a lot missing here in terms, so we can only assume that it's a minimal burden, right? Well, Your Honor, let me, when we're talking minimal burden, let me point out this court's ruling in Nader v. Brewer, 2008. The restriction was Nader could not circulate his petitions except by Arizona residents. Well, there are four, five, six million Arizona residents. But this court held it was a severe burden and implied strict scrutiny. Let me phrase it another way. What if the state allocated that ballot status in a different way? Instead of saying the two largest parties, they said, one party will get its name on the registration form with the checkbox next to it, and we'll settle that by auctioning it off. How much do you think they could collect from a major party for that? I'd say six figures, maybe seven. Maybe a more appropriate question would be, what if they said the top three parties? Would you have the same argument? I know you represent some others that might fall below the top three. I wouldn't have the same argument as to the Libertarian Party, Your Honor, because they would be within that three. I would have the same argument as the Green Party. The interesting part, by the way, on that registration is you decide the two largest parties by the number of voter registrations. What happens if you don't have the two largest groups of voter registrations? You have additional difficulty registering people to vote. You don't get your name recognized in the voter form. So, in a way, I think it's a self-reinforcing cycle. It tends to take a small party The other reason it's a minimal burden is because, as the recent saga with the Green Party demonstrates, this isn't the only way you get ballot access. Not only is this a small part of the registration picture, but as to the ballot access question, it's only part of that story. Well, yes, Your Honor, except that you have to get, I forget now, between 20,000 and 30,000 signatures on petitions. So that is a massive amount of work for the Green Party and also diversion from its other activities. It has to devote resources to this issue, which could be better allocated to carrying out its message. Can I ask you about the strict scrutiny? Because that's where you started with You don't view it as a slight burden, obviously, but it seemed to me that if you go back in time to the Supreme Court cases, you have Burdick and then followed by Crawford, which basically tell us, if we're looking at these voting laws, they say there's no litmus test for how much of a burden, but once you have a burden and you've alleged one, then you go on a balancing test and not basically, you know, what you've alleged is basically the narrow tailoring. But why wouldn't we look to Burdick and Crawford just as a starting point of how we should analyze the case? Your Honor, I think that is a logical way to approach it, and in a way it's sort of regretful that the Supreme Court has not exactly furnished the clearest guidance. If you look at those cases, they talk about a differentiation between severe burdens, which draw strict scrutiny, and, I forget the wording, but basically minor burdens which are justified under certain conditions, ignoring the gap between the two, and talking about what can draw the minor review, which looks like a loose... Do you think this burden here falls somewhere in between? I think it probably would, Your Honor, although... You don't think it's quite minor? I think I would agree it falls in between, but under Nader v. Brewer, Your Honor, I'm not so sure that it wouldn't be classified as severe. It's really not a ballot access issue, really. Do you agree with that? I would agree, Your Honor. Okay, so we, because much of the briefs, you know, for obvious reasons, because we have those cases to look at, they talk about a ballot access, but if we don't analyze it as a ballot access case, but instead a state voter law that, in your view, privileges Republicans and Democrats, and leaves without privilege everybody else, then you really do get to the state's claimed reasons that justify this. And I'd appreciate if you would address what they put in their brief and argued below, as they say, well, there's a cost. We have to reproduce it if you change the parties. And then they point to the Green Party. Would you address what kind of burden you think they need to show to make that justification? Well, even under intermediate scrutiny, the burden would rest on the state. They have not come forward, they did not come forward with any evidence, for example, how often do the ballot, do the forms have to be reprinted? Arizona Green Party will be on the ballot for the next four years. Arizona Libertarian Party has been on the ballot for 20 plus years. Well, suppose it's just rational basis. Your Honor. We're showing, you know, some state interest. You think it can beat that test? I don't think the Anderson test and the other cases would go down the rational basis, Your Honor. Or maybe even lower. In other words, as I understand the cases, if we find that the burden is minor or de minimis, then on the other side, the state's burden is not very high, is it? No, Your Honor. But I would regret it if this Court applied a standard of scrutiny even less than that given to business speech to this form of political speech and association. I would also point out that under the verdict and the other cases, the lowest level of scrutiny only goes to reasonable, non-discriminatory restrictions. I think that can be analogized to time, manner, place restrictions. So long as it's content neutral, okay, you get intermediate scrutiny, because there's minimal temptation to abuse it. They would say to you, and I know you've got a response for this, I'm sure, they'd say, oh, it's neutral. We just said the top two. It could be one of your guys. That is true, Your Honor. Well, it won't be. It could never. At least historically, it's never been, right? Yes. But they would say it's neutral. Oh, sure. But, Your Honor, the amusing thing about that is that the restriction here impedes the parties that aren't in the top two from ever getting to be in the top two, because it measures it only by voter registrations. So if the other forms, which just have blank lines, they're fine? Yes. Is that right? Yes, Your Honor. So your argument at core is pretty much strictly an equal protection-like argument, right? Oh, pardon me. It's not that they have to accelerate or help people fill out this registration. They don't have to tell them what the names of the parties are or anything else. But they can't put some of the names on and leave others off. Yes, Your Honor. They cannot treat as unequals parties which by the law are equal. I mean, for example, Libertarian Party, it has to comply with the same thing. What about the rationale just that 90 or 95 percent of the registrations are going to be Republican and Democrat, and it's just a lot easier to count if you have the actual printed names on there? Yes, Your Honor. Well, you can count by machine if you have the names on there. But the point is, what's the state interest and efficiency there that is defeated if you were to put all four parties with checkboxes? Then you can count everybody by machine instead of just the Democrats and Republicans. But you have to keep reprinting the form. Yes, Your Honor. So in a way, the state is sacrificing the very interests they claim in order to disadvantage the Greens and the Libertarians. They're making counting the ballots more difficult by only having two parties and other, and you have to go back and read the handwritten entry. But then again, they haven't even offered evidence on that, right? Has there been any evidence that these handwritten entries have caused problems? I don't believe there was anything on the record there, Your Honor. Although if people have my standard of handwriting, I'm sure they do. Did you want to save time for rebuttal? I believe I will, Your Honor. Thank you. Thank you. Good morning, and may it please the Court. Robert Ellman with Christopher DeRose for the Secretary of State. I'd like to clear up a factual misstatement. First, Your Honor, you can't count these registration forms, these printed registration forms by machine, regardless whether all the party designations are by checkbox, because in order to complete the form, you have to write something in at least 13 boxes. The party preference designation is the 14th box that you have to write something in if you want to designate a minor party. So that would suggest that your efficiency argument is pretty diluted if you have to read the handwriting on all the other important things that need to be on there, right? That's true, Your Honor. I mean, because if you have basically a handwritten form, you've now carved out Democrats and Republicans. So there's really no efficiency or accuracy argument, right? Well, I think the answer to that is, yes, there still is, Your Honor, and it's a significant one, because the Court's questions are focused on the least important of the governmental interests at stake here. You have a governmental policy interest, first of all, that the Supreme Court has acknowledged is legitimate and important and which outweighed the burdens imposed in the Burdick and Anderson cases. We haven't even addressed that yet. But in addition to that, you have an important government regulatory interest, which is making, first of all, which is registering the highest number of qualified electors, but doing that in a manner that makes the process efficient and, well, easiest and most efficient for the highest number of registrants. One argument makes it more accurate. In other words, you know, when the state worker looks at the form, it's, you know, easier to translate from the box to the whatever tally they're keeping, right, than to write it up.  Your Honor, I'd like to point out that before this statute went into effect, every registrant who wanted to express a party preference had to write it in the box. And more than 2 million Arizonans registered as either Republican, Democratic, Libertarian, or Green without anyone ever complaining about the process. These parties ---- Was there any statement from the legislature as to the purpose of making this amendment to the law? I'm not aware of any, Your Honor. But I do know that in equal protection cases, this Court will look to any conceivable basis expressed. And we've expressed several here. Well, I don't know if it's any ---- That's assuming it's a rational basis. I don't really read Burdick and Crawford as saying it's a rational basis as opposed to ---- No, it's ---- You have to show a sufficiently weighty rationale. And we hadn't had a chance to talk to you about the Republican-Democrat two-party system and some of your other reasons. We were asking him about a few. But let's just walk through the reasons that you've asked about. So we've talked about accuracy and efficiency. And is there anything in the record that shows there were problems with accuracy and efficiency before? Not that I'm aware of, Your Honor. But I think we have a miscommunication here. When I talk about the Court relying on any conceivable basis, I don't mean any rational basis, you know, to meet a rational basis scrutiny test. I'm talking about any important interest which is conceivable, an important interest that would meet the standard of Burdick and Anderson. The difficulty is the same one I mentioned to your colleague here, and that is we don't have any evidence in the record of anything. So on the issue of efficiency, we have nothing. Do we have anything on what the cost would be in terms of the election cycle and the given stability of a certain number of parties to do the reprinting? Well, I have that information, but it's outside the record, Your Honor. It's not in the record. It is not. Okay. See, that is a problem. Well, I'm just asking you. I mean, it's a digital world. Things are pretty easily changed these days compared to before. But then you might tell me, no, no, we have this really special way we have to do it and, therefore, it costs like a bundle of money. But we don't have anything on that, so we won't go there. So then the question I would ask you, well, how many of these paper registrations are there vis-à-vis the digital ones? But that's not in the record either, is it? It is not. Again, I have the information, but it is extra record. But, Your Honor, I — So is all you have to do is say it, not meaning you, but I mean the State, you just have to say it, but you don't have to show any evidence? Your Honor, I'd like to answer that in two ways. All right. First of all, we're here under Rule 56A, and you had cross motions for summary judgment. The initial burden, and the parlance is unfortunate, but the burden is to show that there is a burden on the Green and Libertarian Party, so they have to come forward and do that. The only thing they've identified so far is that they have to write a word on a line instead of checking a box, which is, as I said before, what everyone in Arizona had to do before 2011. Now, these are the facts. Well, I think that would be how he would characterize his burden, but we'll leave him to — Well, the only other burden would be the effect on registrations, and there's no evidence that this has had any effect whatsoever on registrations. Well, is there a decline? Actually, Your Honor — A greater decline on the small parties than on the two major parties. Now I can refer to judicially noticeable facts to supplement that, Your Honor. First of all, as background, there was no evidence at all that there was any causal link between the fluctuations in registrations and this statute. Are you saying it's unfair to draw an inference? Yes, that inference would certainly be unfair, Your Honor. It wouldn't support a judgment in this case. You'd get a directed verdict if that were your only evidence. But even if the court were to accept that, the most recent judicially noticeable registration statistics compiled by the Secretary of State, which are available online, are from November of 2014. Did you submit those to us? I can recite them to you. You haven't. No, Your Honor. I'm asking if the court can take judicial notice. But this is what's so frustrating. We're here on something that's a pretty important case with no evidence, and now we're being asked for the first time to take judicial notice, and I trust that they're going to come right off of some website or somewhere else. But why didn't the State provide any evidence? This was not available at the time of the briefing, Your Honor. These are from November of 2014. This was, but everything else might have been available to the State. Well, again. Is there a calculated judgment or reason? I'm just trying to understand why the State didn't present anything other than assertions in its brief. Because it wasn't your burden, right? Well, it's not, Your Honor, under the context of the Rule 56 motions, because the plaintiffs here do have to come forward and demonstrate what the burden is. And the facts that are in the record and undisputed demonstrate that the State was entitled to summary judgment. And I can walk through those. First of all, as the court alluded to, in terms of burden, even if you ascribe some burden to the distinction that now exists as disparity in how you fill out this form, we're talking about a fraction of voters who register because only a fraction of them use this paper form. But we don't know what fraction that is. What if it's everybody and only two people use the digital form? Even if you assumed that. Everybody uses it. And only two people fill out the digital form. All right. Well, although that's not. You know, I know it's not true. I'm looking at these registration numbers. You've got one point where you've got basically, as you said, two million Democrats and Republicans combined that have registered by and large. Correct. But we have no idea how they got to be registered Democrats or Republicans. Well, Your Honor, taking the facts. Somebody must have used the DMV form, right? Certainly, Your Honor. And I'm not going to stray outside the record in answering that. But even if you view these facts in a light most favorable to these plaintiffs, you're still talking about an extraordinarily marginal number of people. Because even if everyone in Arizona used the paper form, it would only have an effect on people who intend to designate a party preference for the Green or Libertarian Party and are ready, willing, and able to check a box, but not able and ready to write the word Green or Libertarian on a line. And it is very possible that there is not one single person in Arizona who fits that description. Now, you could come forward as the plaintiffs with recognizable evidence to demonstrate that there was some effect, and there is none. There are no affidavits or declarations from anyone stating that they attempted to register as a Libertarian or Green Party member but could not do so, or that they thought they had and, in fact, had been mistakenly registered as a Democrat or a Republican or unaffiliated. There's another fact that's not in the record, which is that the document apparently says they have to give the complete name of the party. What if they write Green Party? Is that good enough? It is, Your Honor. We know that, but we don't know that. Your Honor, I'm going to ask you to draw an extraordinarily obvious inference. The people at the Secretary of State's office, whose business it is to administer elections, certainly know what the Green and Libertarian parties are. So unless someone's handwriting is probably much worse than Mr. Hardy's, I can't imagine that this is actually a significant problem with registration. What if I put L? Well, then you could be a Liberal or Libertarian, and you would end up designated as unaffiliated. But if I put D, then, of course, I would know that was a Democrat. But if you put Green or simply Libertarian, I think it's obvious how you would be registered. But that goes sort of to the size of the line, right? That's what the issue is, he claims. Yes, that's true, Your Honor. So all your arguments now are centered toward demonstrating how minimal the burden is on the plaintiffs. If we assume or if we agree with you that the burden is minimal, then what do you have to show in terms of upholding the validity of the statute? You have to show some kind of state interest, right? That's correct, Your Honor. What does the record show on that? The state interests that we're asserting are the same ones that the Supreme Court identified in Williams, Burdick, and Anderson. And I can describe that for you. It is the state's right, and that's how the Court characterizes it, to enact reasonable election regulations that may in practice favor the traditional two-party system, and the Constitution permits the state to decide that political stability is best served through a healthy two-party system. So that doesn't require any evidence, does it? It doesn't if it's plain that the Republican and Democratic parties are the two parties that have garnered 95 percent of the vote. That rationale, of course, bumps right up against everything else you've said, which is that it's not a burden on anybody. It assumes that it is a burden and that, in fact, you're going to have more people registering as Democrats and Republicans than you would otherwise. Otherwise, it's a nonsensical rationale. Well, as a matter of reality, you would, Your Honor, and the Supreme Court has ---- Well, as a matter of reality, you will have more people registering that way, but more than you would if you just had the lines? I don't believe so, Your Honor. It doesn't advance that rationale. But it does in this sense. If you were a dispassionate, nonpartisan administrator whose goal it was to register the highest number of qualified electors, and you did it with a paper form, which obviously many people use, you would design it with the goal of making it as simple and efficient as possible for the greatest number of users and at the same time ensure that it will accommodate those few users who do not fall in the mainstream. But if it isn't skewing in some fashion or another the number of people who register for different parties, then it isn't advancing the interest and the stability by having a two-party system. I'm not sure I understand, Your Honor, but if it facilitates the act of registration for the majority of people who use the form ---- It facilitates, it makes it easier, so it must have some impact. I do think you're bumping up against each other. I think it's purely an administrative question at that point, Your Honor. It's how you most easily register people and make their party preference designations the easiest. This form doesn't preclude anybody from registering as a libertarian. It makes it less easy, i.e., harder. Well, it maintains the same level of ---- You don't have to be saying that. Your Honor, I think we all agree that checking a box is very slightly easier than writing a name on a form, which is why a disinterested administrator would find the demarcation at the two most populous parties because that makes the form easier to fill out for the extreme majority of people, based on the statistics that the district court relied on before the statute went into effect. But what do you make of the argument, which I think comes from Anderson and I think the Libertarian Party made to some degree, and that is it's no surprise when you have a legislature that's made up predominantly of Republicans and Democrats that they could make laws that in fact disadvantaged smaller parties and that basically by saying the top two parties, they know who they are. So it's just they've coded over saying Democrat and Republican. They've just said the top two. But the people making that rule are the Democrats and Republicans. So therefore, under Anderson, we're supposed to give some scrutiny to that kind of a rule. What is your response to that? Well, I don't think ---- Well, first of all, as the Court recognized, we have a facially neutral statute. And what the plaintiffs would have to come forward to show here is invidious discrimination. And you can't establish that simply by virtue of the fact that the legislature is composed mostly of Democrats and Republicans. Well, but it is facially, but the reality is when you say the top two, if you say that it's facially, that it's we know who they are. I mean, that's what they were voting for. We know we're going to put the Democrats and the Republicans in a little checkbox. So I'm not sure the fact that it's facially neutral changes the reality, does it? Well, all I'm saying with respect to that, Your Honor, is that the fact that the Court uses the word nondiscriminatory in the case law doesn't mean that the strict scrutiny standard applies here because the Court in Anderson used the intermediate scrutiny that ---- Suppose there were a record which there isn't. I'm sorry, Your Honor. Suppose there were a record which there isn't that after this went into effect, the registration for the Green and Libertarian parties dropped by half. Well, if you could bring in a witness to testify that that was attributable to problems with registration, which ---- And then you brought some people in and said I don't know how to spell Libertarian and I thought I had to say the whole party. I didn't know the real name of the party, and so it didn't fill it out. That would establish that this statute imposes a burden, Your Honor, yes, but you'd probably still be in the intermediate scrutiny situation because that's not necessarily severe. That would depend on the testimony. But what you're dealing with here is clearly a de minimis burden. It is writing a word on a line. Could I just clarify one thing which I thought I understood from your 28J letter as well, but I just want to make sure, and that is that you want us basically to adopt the Anderson verdict standard for looking at this. Well, to apply it as you did in Caruso, Your Honor, from what I understand opposing counsel has argued that the strict scrutiny test applies to equal protection where it wouldn't to a First Amendment case, and that's not so. And I know you disagree with that. Oh, certainly. Every circuit has applied intermediate scrutiny. Thank you. So thank you, Your Honor. I think you have some rebuttal time. Mr. Hardy. The central question in this case is, I think, phrased fairly simply, which is why don't they just put four boxes on the registration form instead of two? In what we've just heard, I don't believe that question was ever answered. No, but that assumes that, well, they have to, you know, use the least intrusive means, right? It wouldn't necessarily be hinging upon that or even. Why not put five? Yeah, or even strict scrutiny. The question is, but that's not the question we should ask, right? I think in the end, if so long as they bear any burden, and even under intermediate scrutiny they do bear burden, I think, Your Honor, that is the question. I mean, why was this not done? Give us a good reason. Well, they're saying, number one, that you really didn't come forward with any real burden. So let me just leave aside the size of the line, which I have to say I'm kind of skeptical. Oh, that was a joke, yeah. About your argument on that. But the other one, that they don't have the little boxes. They're saying, well, you haven't really shown any burden by the fact that you don't have the little boxes for these other parties. And, therefore, they actually don't have to do much other than to just say, you know, this helps the two-party system. Well, as I said, Your Honor, the question is, if you put up one box on the thing and auctioned it off, would you draw hundreds of thousands or millions of dollars from the party's bidding for that recognition? I don't quite understand that hypothetical because it doesn't really have anything to do with the fact that they took the top two parties. And you're now saying, well, that's unfair to your party. So what's the burden to your potential membership? I think, Your Honor, that the burden of demonstrating that sort of thing is relatively light. If you look at Nader v. Brewer, he was just limited to hiring in-state petition circulators, and there are millions of people available. This Court still said that was a severe, sharp burden and imposed strict scrutiny. But that doesn't tell me what your burden is. I still haven't quite heard. I'm just trying to understand what is the burden on the people who are not among the 2 million that checked the box to write in something? What is the burden? It isn't that significant, Your Honor. You check the box, you write it in, and hope, unlike me, they can read my handwriting. But the point is the differentiation between the two, since this is equal protection. I think under the Anderson thing, it fails because it isn't non-discriminatory, so we do go to strict scrutiny. And I think, though, the burden may be... So the burden is basically not much. It is not much, Your Honor. Just out of curiosity, following up your argument about the one-box registration form, I suppose the legislature said, well, we'll have one box, and that's for the party with the most voters who voted at the last gubernatorial election. The same analysis would apply to that as it applies to this case, wouldn't it? I think it would, Your Honor. I guess you'd have either the Democrats or the Republicans standing up next to you with that one, right? I think so, yes. Probably the Democrats, based on the registration. And probably in a way that illustrates one of the problems I cited, which is that they measure the biggest parties by registrations, not by voter turnout, and then they turn around and disadvantage anyone who isn't in the top two, minimizing their chances of ever getting to the top two. I see we've run out of time, Your Honor. Thank you. Thank you. I'd like to thank both counsel for your argument this morning. Arizona Libertarian Party v. Bennett is submitted. Thank you.
judges: Tashima, McKeown, Berzon